CITY HOSPITAL OF AKRON v LEWIS

Ohio Appeals, 9th Dist, Summit Co

No 2338. Decided Feb 16, 1934

Benner, McGowan & Lombardi, Akron, for plaintiff in error.

Jonathan Taylor, Akron, for defendant in error.

## OPINION

By WASHBURN, PJ.

At the conclusion of all of the evidence, the defendant asked the court to arrest the case from the jury and enter a judgment in its favor, "or, in the alternative, that the court instruct the jury to return a verdict against the plaintiff and in favor of the defendant," which motion was overruled and an exception noted.

Among other errors complained of, it is

urged that the court should have granted said motion.

Inasmuch as the plaintiff did not in his petition claim that the defendant had in its employ incompetent nurses or attendants and did not claim in the petition as a ground of recovery the negligence of the defendant in the selection or retention of incompetent employees, and inasmuch as no such ground of recovery was alleged or claimed in the reply, evidence relating to such a claim would have been incompetent on behalf of plaintiff in his case in chief. In any event, the plaintiff did not introduce any evidence in his case in chief tending to prove that the defendant failed to use reasonable and ordinary care in the selection or retention of its nurses and other employees, and therefore plaintiff was not entitled to recover on such an issue if it can be said that such an issue was raised by the superfluous and unnecessary reference to the matter in the answer. The case was therefore a simple one. If the defendant was a public charitable institution, it was not liable to the plaintiff.

Whatever may be the law in other jurisdictions, it must be considered as settled in Ohio that, if the trustees of a public charitable hospital exercise reasonable care to select and retain competent physicians, nurses, employees and servants, the hospital is not liable to a patient for damages resulting from the negligence and incompetence of those so selected and retained.

**Taylor, Admr. v Protestant Hospital Assn., 85 Oh St 90.**

**Taylor v Flower Deaconess Home and Hospital, 104 Oh St 61.**

**Sisters of Charity of Cincinnati v Duvelius, 123 Oh St 52.**

"1. The fact that a public charitable hospital receives pay from a patient for lodging and care does not affect its character as a charitable institution, nor its rights or liabilities as such in relation to such patient."
Taylor, Admr. v Protestant Hospital Assn., supra.

As has been stated, plaintiff alleged in said petition upon which the case was tried, that the defendant was "an Ohio corporation, engaged in the **business** of conducting, maintaining and operating a hospital." The answer admitted that the defendant operated and maintained a hospital but denied that it was engaged in conducting a "business."

The word "business," used in describing a corporation, denotes a commercial or industrial enterprise or signifies mercantile transactions.

A corporation not for profit—that is, not engaged in conducting a business—may or may not be a public charity; but a corporation for profit cannot be a public charity, and therefore, under the settled law of the state applying to liability of public charitable institutions, there being no allegation in the petition of failure to exercise ordinary care in the selection or retention of employees and attendants, it is apparent that the word "business" was used in said petition as describing a commercial or industrial enterprise, as distinguished from a public charity.

The trial court, however, apparently chose to regard the issue as to whether the defendant was a business corporation or was a corporation not for profit, as being raised by the answer, which specifically alleged that it was a corporation not for profit, and the court treated that issue as a defense and charged the jury that the burden of proof thereon was upon the defendant.

As heretofore stated, plaintiff offered no evidence in his case in chief tending in any manner whatever to show that the defendant was negligent in employing or retaining incompetent employees and attendants, and furthermore he offered no evidence tending to prove that the defendant conducted its affairs as a business or commercial enterprise; but in the introduction of defendant's evidence, the plaintiff developed some evidence which he claims tended to prove that, while the defendant was admittedly organized as a corporation not for profit, it was in fact operated as a business, as distinguished from a public charity, and also that it was negligent in the selection or retention of the employees or attendants whose negligence was the cause of plaintiff's injuries.

Was such evidence developed as to require that the case be submitted to the jury?

The charter, constitution and by-laws of the defendant definitely proclaim it to be a corporation not for profit, organized to conduct a public charity, and if in connection therewith consideration be given to the evidence as to how its affairs have been conducted, we find that its buildings were erected and the hospital equipped by donations and voluntary contributions made by persons interested in hospital work; that though a corporation, no stock has ever been issued or can be issued and no dividends have been paid or can be paid; that the defendant receives and cares for per-

sons who are able and persons who are unable to make payment for the care and services rendered, and receives and cares for charitable cases "without distinction of race, nationality, color, sex, religious sentiment or opinion" and has never turned away a person who required care, treatment and nursing; that it receives some patients at a stated, fixed or agreed compensation, and has a regular schedule of prices for such persons; that a majority of its patients are of that class, and that they agree in advance to pay for hospital service; that the sums so received are used solely in paying the expenses, and cost of running the hospital, including the care of charity patients, and that the hospital is operated from money so received, together with such benevolent gifts and donations as it is able to obtain by solicitation or voluntary donations and from endowments which yield a small yearly return; that the amount received from pay patients is not sufficient to pay the running expenses of the hospital; and that the hospital could not operate without the free services of the physicians and others connected with the hospital.

It is true that the evidence as to the organization and operation of the defendant, aside from its charter and by-laws, comes from witnesses interested in and connected with the defendant, but their testimony is not disputed, and there is nothing in the record tending to affect their credibility or cast suspicion upon their testimony and we do not find that any conflicting inferences may be drawn from their testimony or that there is any weighing of evidence involved.

Some courts may hold that under such circumstances the credit to be given to such testimony should be left to a jury, but we think the weight of authority and the better rule is that it was the duty of the trial court, and now is the duty of this court, to declare the law applicable to the facts so fully and definitely established.

Jerke v Delmont State Bank, 72 A.L.R. 7. 26 R.C.L., "Trial," §80, p. 1075.

From the evidence in the case, only a part of which has been referred to, and regardless of whether the burden rested on the defendant to show facts constituting it a charitable institution, we find, as a matter of law, that the defendant is a charitable institution and has never been other than a charitable institution.

Being a charitable institution, it is not liable to the plaintiff if it exercised reasonable care in the selection and retention of competent employees and attendants. The plaintiff did not claim in his petition that the defendant did not use such care, and failed in his evidence in chief to introduce any evidence tending to prove that it did not use such care, and the evidence that was developed upon cross-examination by plaintiff of defendant's witnesses was not such as to tend to prove that the defendant failed to use such care in the selection and retention of the nurse whose negligence caused plaintiff's injuries.

"4. Mere proof that operating nurses were negligent, which resulted in burning of patient's leg, held insufficient to prove negligence on part of charitable hospital in failure to prescribe proper rules of government or in selection or retention of offending nurses."
Steele v St. Joseph's Hospital, 60 SW (2d) 1083.

"2. Assuming that a charitable hospital is liable for its negligence in furnishing incompetent nurses, it must affirmatively appear that an injury complained of was caused by lack of reasonable care in selection of the nurses, and not to the independent negligence of such nurses."
Mikota v Sisters of Mercy, 168 NW 219.

The trial court erred in not charging the jury as requested, that the defendant is what is known in law as a charitable institution and that it was such at the times complained of by the plaintiff.

A careful review of all of the evidence leads us to the conclusion that, after construing such evidence most strongly in favor of plaintiff, reasonable minds can reasonably come to but one conclusion, and that is, that the defendant was a public charitable institution and that it was not negligent in the selection or retention of the nurse whose negligence caused plaintiff's injuries, and that therefore the trial court erred in not granting the motion of the defendant at the close of all the evidence for a judgment in its favor.
Hamden Lodge v The Ohio Fuel Gas Co., 127 Oh St 469.

For such error the judgment is reversed, and final judgment entered in this court for the defendant.

There is a question which has been considered and which, in view of the conclusion herein announced, it is unnecessary for us to definitely determine, but we are asked to express an opinion in reference to it because in the trial of similar cases against the defendant there have been a diversity of rulings by the judges of the Common Pleas Court of this county in

reference thereto. As a public purpose may be served thereby, we accede to the request.

The question is as to whether the determination of the character of the institution presents a question of law, or one of fact which must be submitted to a jury.

We have been able to find only a very few cases in which the trial court has been upheld in submitting the question of the character of the institution to the jury as a question of fact; and the very nature of the question is such that it involves legal principles and the application of certain facts thereto to such an extent that its solution in a satisfactory manner is possible only by the court. Indeed, there are a number of cases wherein the courts have held that 'if the charter, constitution and by-laws of the corporation conducting a hospital are sufficiently complete and definite, when considered with the laws of the state, to show that it is a corporation not for profit, organized for the express purpose of conducting a purely charitable institution for the benefit of the public, and that it has no power to devote the property held in trust by it to any other purpose, parol evidence is not admissible, in a suit by a patient to recover damages for an injury caused by the negligence of its employees, to show that, in violation of its charter, it does not operate as a public charitable institution.

Gitzhoffen v Sisters of the Holy Cross Assn., 8 L.R.A. (N.S.) 1161.

Craig v Benedictine Sisters Hospital Assn., 93 NW 669.

Senour Mfg. Co. v Church Paint & Mfg. Co., 84 NW 109.

In re Fuller Laundry Co., 82 NW 673.

City of Kalamazoo v Kalamazoo Heat, Light & Power Co., 82 NW 811.

In re Moses Estate, 123 N. Y. Supp. 443.

Such principle is recognized in **O'Brien v Hospital Assn., 96 Oh St 1.**

Of course, if the character of the institution is to be determined by its charter, constitution and by-laws, it is the duty of the court to construe them and determine the matter, and no jury question is involved.

But assuming that evidence as to the manner in which the institution is operated is competent, as is held by a number of cases, still the charter, constitution and by-laws are important—very important—in determining the character of the institution, and it is not the province of a jury to construe them, and it is apparent from a consideration of the various learned discussions in the cases as to when and under what circumstances an institution can be said to be a charitable institution, that it does not depend upon any particular fact or set of facts, but is a mixed question of law and fact, depending largely upon law, and only incidentally upon fact.

Almost every element entering into the problem is essentially legal rather than factual; all of the terms used to describe a public charitable institution are used in their legal sense rather than as simple facts, and in most cases no purely simple fact or set of facts controls. Although the answer to the question as to whether a certain hospital is a public charitable institution may depend in a sense and in some measure on facts, the inferences to be drawn from them are legal inferences, as distinguished from fact inferences, which may change with the personality of him who makes them.

It is conceivable, of course, that a situation might arise where the answer would turn upon a much-disputed fact which could be properly left to the jury; but such situations would necessarily be very rare indeed. We think it safe to say that, as a general rule, the question of whether a hospital is a charitable institution is not a question of fact which is required to be submitted to a jury, but is one of law to be determined by the court.

FUNK and STEVENS, JJ, concur in judgment.